OPINION OF THE COURT
Norman C. Ryp, J.
I. Issue(s):
In a defamatory action by a private individual concerning a private matter: (a) What is the burden of proving both constitutional and common-law “malice” to overcome a qualified common interest privilege and obtain compensatory and/or punitive damages? (b) What degree, if any, of fault applies?
Novel and unsettled issues before New York’s Court of Appeals.
II. Facts:
Plaintiff, Shahla Zaidi (Zaidi), was employed by defendant, United Bank Ltd. (UBL), from May 1975 until at least November 12, 1996 when she was relieved of her duties at the defendant bank’s New York branch (30 Wall Street, New York, New York) and transferred back to UBL’s head office in Karachi, Pakistan.
By her own admission and choice, plaintiff did not then return. Nor did she ever perform any duties or services at UBL’s request, after November 12, 1996 in New York or Pakistan.
Instead, on December 27, 1996, plaintiff wrote a letter to Mr. Sardar Haq Nawaz, UBL’s main branch’s senior executive vice-president, international division.
In response, Mr. Nawaz instructed defendant, Khan, then UBL’s New York branch senior executive vice-president/general manager, and Mr. Ghias Malik, then its New York branch assistant vice-president/manager of operations, to reply. This they did in a nine page letter to Mr. Nawaz, dated January 9, 1997, which included the following three statements:
1. Attempt to Defraud Government by Claiming Unemployment Benefits: “She did not inform us that she has claimed *3 unemployment benefits (effective date of claim Dec 30, 1996) from the New York State Department of Labor (copy of their notice to the bank dated January 03, 1997 enclosed). The matter was followed through her telephone and written reminders. In our opinion she is not eligible for any payment from United Bank after December 31, 1996. This shows that she has claimed double benefits for 15 days from United Bank, as well as, from New York State which amounts to make an attempt to defraud either, and she is liable to disciplinary action. It is apparent that she might have claimed similar double payment in the past.” At trial, Mr. Malik testified he so attested at the New York State Division of Unemployment appeal hearing.
2. Misreporting Security Position to Federal Reserve Bank: “She also mis-reported the whole security position to the Federal Reserve Bank of New York [FSB] and New York State Banking Department [NYSBD] and to Head Office. The bank is likely to suffer total loss since the borrowers have refused to execute the mortgage and have left New York in order to hinder the legal proceeding initiated by the Branch.”
3. Leaking Information to Borrowers (continued from above but separate potential defamatory statement): “As a precaution, Mr. Shahab Ayub VP and Ms. Shahla Zaidi were specifically requested not to divulge the information [about the Branch’s security with respect to the above mortgage position] but somehow, the information was leaked to them.”
All other references were clear expressions of opinions.
Plaintiff, Zaidi, followed up a July 28, 1997 response letter to UBL’s president Zubyr Soomru referring to defendant, Khan, as “a complete failure” and an August 11, 1997 letter also to UBL’s president Soomru with additional accusations against defendant, Khan, and Mr. Malik including that Khan “reduced the New York branch to a sorry state of affairs.” There was no further response to either of these letters by defendants.
In July 1997, Ms. Zaidi took position with American Express Bank which became a permanent position in October 1997 at a salary of $45,000-$52,000 (without any additional allowances). III. Procedural and Trial History:
Plaintiff, Shahla Zaidi, commenced this action on May 8, 1998 asserting six causes of action. All of these actions were dismissed on the grounds of forum non conveniens, except count VI, the defamation action, by then Justice Franklin R. Weiss-berg’s March 13, 2000 order. The defendants then moved for summary judgment, under CPLR 3212, to dismiss the sole *4 remaining defamation claim against UBL, Khan and Sardar Haq Nawaz (Nawaz) on November 3, 2000. Plaintiff, Zaidi, based her defamation claim entirely on the above defendants’ January 9, 1997 response letter.
Justice Weissberg determined that only the above-quoted (at 2-3, supra) three statements in the January 9, 1997 letter were not opinions but, actionable expressions of fact, subject to a qualified privilege.
During trial after completion of plaintiff’s prima facie case, defendants moved for a CPLR 4401 judgment as a matter of law, and in their posttrial papers moved for a CPLR 4404 judgment as a matter of law and dismissal of the jury’s award of compensatory damages, with plaintiff opposing all defendants’ motions.
By a unanimous verdict (6-0), the jury found that the defendants maliciously defamed the plaintiff in the January 9, 1997 letter and awarded her $6 in compensatory and undetermined punitive damages.
IV. Parties’ Contentions:
V. Legal Analysis:
A. Defamation Generally
B. Legal Elements of Defamation
The three basic elements a plaintiff must prove, by a “fair preponderance of the evidence” (Dun & Bradstreet, Inc. v Greenmoss Bldrs., Inc., 472 US 749 [1985]), to succeed in a defamation case with a private person and a private concern are that the statement: (1) is of a defamatory nature; (2) refers to the plaintiff; and (3) was published to someone other than the plaintiff. (Cuevas v Harvard Univ. Press, 269 AD2d 328; Aronson v Wiersma, 65 NY2d 592, 594; Golub v Enquirer/Star Group, 89 NY2d 1074.) Three additional common-law elements: (4) falsity; (5) some degree of fault; and (6) injury or harm to plaintiff were presumed as a matter of law, depending on the matter and manner of defamation. Four, falsity, did not have to be alleged or proved unless plaintiff was a public official, figure or a matter of public concern. (Gertz v Robert Welch, Inc., 418 US 323.)
iv. Fault
At common law and until 1964 (New York Times Co. v Sullivan, 376 US 254 [1964]) defamation, injury to reputation, was a strict liability tort. (Prosser and Keeton, Torts § 111 [5th ed]; Restatement [Second] of Torts § 568, Comment b.)
In Gertz (supra at 339) in 1974, 10 years after the landmark New York Times Co. case, the United States Supreme Court *5 held the First Amendment limited the states’ ability to impose liability for defamation, including media defamation of a private person involved in an issue of public concern, by requiring proof of some degree of fault. The New York State fault standard required of such a private person by media defamation was proof “by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.” (Cha-padeau v Utica Observer-Dispatch, 38 NY2d 196, 199 [1975] [emphasis added].)
A 1985 case, involving a private plaintiff (Gertz, supra at 323), was limited, by the Court, to questions of public concern, because issues of purely private concern warrant lesser First Amendment protection. As such, a private plaintiff could recover presumed or punitive damages without proving constitutional malice. (Dun & Bradstreet, supra at 749.)
The New York Court of Appeals has yet to establish what degree of fault, if any, plaintiff is required to prove in cases involving a purely private plaintiff and speech implicating purely private concerns, as herein. In 1998 and 1999, the Appellate Division, First Department, applied the negligence standard in two such cases but involving a media defendant (not herein). (Huggins v Moore, 253 AD2d 297, 313, revd on other grounds 94 NY2d 296, 313 [1999]; Krauss v Globe Intl., 251 AD2d 191, 194 [1st Dept 1998].)
C. Public or Private Figure; Public or Private Concern
Since 1964, in a defamation analysis after evaluating the above, V. Legal Analysis, B. Legal Elements of Defamation, the court must next determine whether the party allegedly defamed is a public official or figure, or private person (New York Times Co., supra at 254; Curtis Publ. Co. v Butts, 388 US 130, 155-156 [1967]). The United States Supreme Court has long proclaimed that not all speech deserves equal United States Constitution First Amendment protection or is of equal First Amendment value. (Dun & Bradstreet, supra at 758-759.) As such, “matters of public concern” are “at the heart of the First Amendment’s protection” (First Natl. Bank of Boston v Bellotti, 435 US 765, 776 [1978]). Conversely, speech on matters of purely private concern deserve less First Amendment shelter. (N.A.A.C.P. v Claiborne Hardware Co., 458 US 886; see also, Connick v Myers, 461 US 138, 146-147 [1983].) Thus, private individuals are accorded greater reputation protection though possibly media defamed because they have less effec *6 tive opportunities for rebuttal and, thus, are more vulnerable to injury from defamation. (Gertz, supra at 323.) For example, potential nonmedia defamation of a private individual, herein, Ms. Zaidi, regarding a purely private matter, her employment skills and actions, receives less First Amendment protection than a public figure.
D. Privileges and Defenses: Absolute and Qualified
Even if the plaintiff meets her burden of proof with respect to the above three elements of defamation, the defendant is not automatically liable of defaming the plaintiff. Instead the burden shifts to the defendant(s) to prove he is protected by a claimed privilege, either absolute or qualified.
i. Absolute Privilege or Defense
There are absolute privileges or defenses that may completely defeat a defamation claim. The first absolute defense is truth. If the alleged defamatory statement is factually true, it is not defamatory, where it involves private plaintiffs and speech on matters of private concern. (PJI3d 3:33 [2002]; Restatement [Second] of Torts § 581A, Comment f.)
The first absolute privilege is for speaking or writing defamatory statements without regard to motive or truth, if made in the official performance of a political, judicial, social or personal duty. (Black’s Law Dictionary 1196 [6th ed].) The second absolute privilege covers the publication of a fair and true report of any judicial, legislative or other official proceeding.[1] The third absolute privilege covers owners and personnel of radio and television stations for defamatory statements by political candidates.[2]
ii. Qualified, Conditional or Common Interest Privilege
A qualified or conditional privilege exempts the writer or speaker from defamation liability unless actual malice is proven.[3] This is where the communication pertains to a public interest or is necessary to protect one’s private interest and made only to person(s) having a common interest in the subject *7 matter. (Black’s Law Dictionary 1197 [6th ed.]; Foster v Churchill, 87 NY2d 744, 751 [1996].) Its foundation complements the First Amendment protection, so that a democracy should not inhibit nor stifle the “flow of information between persons sharing a common interest,” unless the privilege is abused. (Liberman v Gelstein, 80 NY2d 429, 437; Toker v Pollak, 44 NY2d 211, 218-220 [1978]; Bardey v Brooke-Hitching, 191 AD2d 243 [1st Dept 1993] [where defendants act within the scope of their common interest duties, it is for the court, not the jury, to decide whether the qualified privilege exists].)
This qualified “common interest” privilege protects only communications between persons having a “common interest” in the subject. (Restatement [Second] of Torts §596 [5th ed].) This qualified privilege has been applied to protect employees of a single company (Loughry v Lincoln First Bank, 67 NY2d 369; Harris v Hirsh, 228 AD2d 206, lv denied 89 NY2d 805 [1996] [memoranda and statements about employees prepared for internal employee reviews]; Dillon v City of New York, 261 AD2d 34, 40 [1st Dept 1999]), faculty members at a tenure committee meeting (Stukuls v State of New York, 42 NY2d 272 [1977]), physician members of a health insurance plan (Shapiro v Health Ins. Plan, 7 NY2d 56 [1959]), and tenants in common (Liberman, supra at 437).
Unlike the indefeasible “absolute privilege,” the “qualified privilege” may be overcome if the plaintiff demonstrates that defendant acted with either constitutional or common-law malice in making the statement. (Dun & Bradstreet, supra at 749; Weldy v Piedmont Airlines, Inc., 985 F2d 57 [2d Cir 1993]; Liberman, supra at 437; Park Knoll Assoc. v Schmidt, 59 NY2d 205, 211; Loughry, supra at 376.) The distinction between constitutional (wanton, willful or reckless disregard of the truth) and common-law (hatred, ill will or spite) malice is of greatest relevance to the type of damages to which a prevailing plaintiff may be entitled and the burden of proof required.[4]
E. Malice and Damages
“‘[M]alice is malice’, but it, unfortunately, has two distinct meanings in the law of libel from which two distinct burdens *8 are imposed on plaintiff. It may mean ‘either actual malice or such malice as by legal fiction is presumed for the purposes of reconciling certain other rules on the law of libel.’ ” (Corrigan v Bobbs-Merrill Co., 228 NY 58, 66 [1920], quoting Den Norske Ameriekalinje Actiesselskabet v Sun Print. & Publ. Assn., 226 NY 1, 9 [1919].)
i. Constitutional Malice and Compensatory Damages
After the plaintiff has sustained her burden of proving the statement(s) in question was/were defamatory and defendant sustains his burden of proof showing that he is entitled to the protection of a conditional privilege, the burden of proof shifts back to the plaintiff to defeat the defendant’s privilege with a showing of malice. (Dun & Bradstreet, supra at 749; Gaeta v New York News, 62 NY2d 340, 351.)
Since 1964, New York Times Co. (supra at 279-280) and its progeny, the United States Supreme Court’s once termed “actual malice” became “constitutional malice” as, “knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not.” (See also, Garrison v Louisiana, 379 US 64, 74 [1964]; Liberman, supra at 438; Harte-Hanks Communications v Connaughton, 491 US 657, 667 n 7 [1989]; Masson v New Yorker Mag., Inc., 501 US 496, 522-523 [1991].) Thus, if a defendant has spoken or written a statement aware of its absence of truth or simply with reckless disregard as to its truth, the defendant has acted with constitutional malice. (Dun & Bradstreet, supra at 749.) Reckless disregard is a high degree of awareness of a statement’s falsity or serious doubt of a statement’s truth. (Garrison, supra at 74; Liberman, supra at 438; Loughry, supra at 376.) It is more than negligence, haste or a mistake. (New York Times Co., supra at 280.) Constitutional malice is not found where the statement is simply proven false (Stukuls, supra at 272), there “must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication.” (St. Amant v Thompson, 390 US 727, 731 [1968].)
Once constitutional malice is proven generally or to defeat a qualified privilege, the plaintiff is entitled to at least nominal compensatory damages only because such proof does not establish the outrage underlying the public policy permitting punitive damages. (Liberman, supra at 429; Loughry, supra at 376.) Such compensatory damages are available even in the absence of a showing of actual or special harm to the plaintiff. (60 Minute Man v Kossman, 161 AD2d 574 [2d Dept 1990].)
*9 ii. Common-Law Malice and Punitive Damages
Whereas constitutional malice, as defined in New York Times Co., focuses on the defendant’s knowledge or state of mind in relationship to the veracity of the statement in question, and does not rise to the level of outrage or malice necessary to engender punitive damages common-law malice is “hatred, ill will, spite or wanton, reckless, or wilful disregard of the rights of another or the injurious effect of the defendant’s conduct upon another,” which supports an award to plaintiff of punitive damages. (2 NY PJI3d 261 [2002]; Prozeralik v Capital Cities Communications, 82 NY2d 466, 479-480 [1993]; Stukuls, supra at 272; Shapiro, supra at 61.) Common-law malice is not concerned with a defendant’s general feelings or past actions toward the plaintiff, or even exclusive falsity of the statement, but rather the defendant’s motivation for making the alleged defamatory statement. (Liberman, supra at 437; Stukuls, supra at 281-282.)
While these distinctions between constitutional and common-law malice, compensatory and punitive damages are well established in the law of defamation, the burden of proof for proving these elements remains unsettled in New York State.
iii. Burden of Proof
In general, the matrix which dictates the applicable legal standard of First Amendment protection (see, V. Legal Analysis, C. Public or Private Figure; Public or Private Concern, supra) also plays a significant role in directing the burden of proof necessary to prove malice, constitutional or common law. “Whether a preponderance-of-the-evidence standard or a clear- and-convincing standard is used for proving malice depends upon the status of the plaintiff as a public or private figure and whether the subject of the speech is a matter of public or private concern.” (44 NY Jur 2d, Defamation and Privacy § 251 [2000] [emphasis added].)
For example, if the plaintiff is a (general purpose or limited) public figure and the matter is either public or private, malice, constitutional or common-law, is to be proven by clear and convincing evidence. (New York Times Co., supra at 285-286 [referring to the standard as “convincing clarity”]; Curtis Publ. Co., supra at 130 [interpreting the New York Times Co.’s standard of proof by “convincing clarity” as meaning proof by “clear and convincing evidence”]; Weldy, supra at 57; Prozeralik, supra at 474; Armstrong v Simon & Schuster, 85 NY2d 373, 381.)
If the plaintiff is a private person, but the matter is of public concern the burden of proof for malice, constitutional or common-law, is fair preponderance of the credible evidence. *10 This burden of proof is intentionally lower than that for a public figure because “the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual.” (Gertz, supra at 345-346; Chapadeau, supra at 196, 199.)
At present, there is no New York State Court of Appeals case definitively addressing the burden of proof for malice, constitutional or common-law, where the plaintiff is a private person and the matter is of private concern, as herein.[5] Thus, the court must derive the burden of proof for malice, constitutional or common-law, in a defamation case with a private plaintiff and a private matter from case law and legal analysis.
In the majority of civil cases, the preponderance of the credible evidence standard is adequate and sufficient for proving constitutional or common-law malice and to further public policy and justice echoed in defamation cases. This well established reasoning is just one argument for applying the fair preponderance of the credible evidence standard to the unsettled area of burden of proof in cases concerning private plaintiffs and private matters. {Gertz, supra at 346; Huggins, supra at 313 [but burden of proof not mentioned by the Court of Appeals, supra, 94 NY2d at 306]; Chapadeau, supra at 199.) However, one must note cases which deviate from the general trend. For example, when the plaintiff is a public figure and the matter concerns constitutional issue{s) germinating from the First Amendment, public policy protecting freedom of speech and furthering democracy may require proving constitutional and common-law malice by the heightened clear and convincing burden of proof articulated in New York Times Co. {supra at 285-286; see also, Harte-Hanks Communications, supra at 659; Prozeralik, supra at 474).
A second argument and a general rule of defamation law is that, the fair preponderance of the credible evidence standard should ubiquitously apply to all elements in defamation cases to promote consistent and efficacious adjudication. (Corrigan, supra at 66-67 [holding that the evidentiary standard for prov *11 ing common-law malice is the same as for constitutional malice, fair preponderance of the evidence].) Not all cases adhere to this general rule. Status of the plaintiff and character of the matter aside, there are occasions where the lesser, constitutional malice, is to be proven by the fair preponderance of the credible evidence standard, while the more egregious common-law malice must be proven by clear and convincing evidence (see, e.g., Gertz, supra at 346; Greenbaum, supra at 973). For example, the United States Supreme Court, the New York Court of Appeals and New York’s Appellate Division, First Department, held that common-law malice must be proven by the higher evidentiary standard of “convincing clarity,” or “clear, unequivocal and convincing evidence” which entitles the plaintiff to punitive damages designed to deter similar actions in the future. (Bose Corp. v Consumers Union of U.S., 466 US 485, 511 n 30 [1984]; Prozeralik, supra at 474; Camillo v Geer, 185 AD2d 192, 194 [1st Dept 1992] [products liability case].) Yet, the United States District Court, Southern District of New York, in Greenbaum {supra at 973), sided with the general rule and the New York Court of Appeals in Corrigan {1920), holding the standard to prove common-law malice and obtain punitive damages to be fair preponderance of the credible evidence.
Pending concrete resolution by the New York State Court of Appeals, this court finds the reasoning behind applying the fair preponderance of the credible evidence to all defamation elements including constitutional and common-law malice, as in Corrigan and the general rule, most persuasive especially applied to the subject private person.
VI. Findings of Facts and Application to the Law of Defamation
A. Public or Private Figure; Public or Private Concern
It is agreed by both parties that plaintiff, Zaidi, is a private figure and the three written statements concerning: (1) unemployment benefits, (2) misreporting security position to FRB and NYSBD, and (3) leaking information to borrowers {see, statement details in section II. Facts, supra) contained in the January 9, 1997 letter, which are the subject of this defamation action, concern a private matter.
B. Defamatory Meaning
It is “reasonably susceptible” that all three subject statements could conjure “an evil or unsavory opinion” of an individual “in the minds of a substantial number of [a] community's members].” (Cuevas, supra at 328 [emphasis added]; Aronson, supra at 592.)
*12 C. Statements Refer to the Plaintiff
Furthermore, there is no dispute that the subject statements one and two refer to the plaintiff, thus fulfilling the second element of defamation. However, statement three inferring that Ms. Zaidi leaked information to borrowers does not unquestionably refer to Ms. Zaidi by a preponderance of the credible. Rather the statement simply reads, “somehow, the information was leaked.” Thus, statement number three is not defamatory.
D. Publication
Under the law of defamation, the January 7, 1997 letter was published because it was communicated to a third party, that is, someone other than the plaintiff. (Loughry, supra at 369.) In addition to the plaintiff and Mr. Nawaz, to whom plaintiffs initial letter was addressed, the January 7, 1997 letter was published to Mssrs. Khan, Malik and M. Safdar Iqbal. With this proof of publication, plaintiff satisfied all three elements of defamation for statements one and two.
The jury found each of the above elements proven by a vote of six to zero.
E. Fault
In following the reasoning in section V. Legal Analysis, B. Legal Elements of Defamation, iv. Fault (supra), it appears that where there is a private plaintiff, private concern(s) and a nonmedia defendant, as herein, that no degree of fault, i.e., strict liability, applies.
F. Privileges
Defendants are not protected by an absolute privilege, but are protected by the qualified or conditional privilege known as the “common interest privilege.” (Black’s Law Dictionary 1197 [6th ed]; Foster, supra at 751.) Specifically, in Dillon (supra at 40), the Court held that memoranda prepared for internal employee reviews and statements about employees made in the employment context to persons having a common interest in the subject are protected by a qualified, common interest privilege. Here, the court found and finds that Mssrs. Nawaz, Khan, Malik and Iqbal were all high level executives of UBL and responsible for the performance and actions of their employees and subordinates, thus sharing a common interest in the employee, Zaidi, and the contents of her December 27, 1996 letter to Mr. Nawaz.
G. Constitutional Malice and Compensatory
Having found that plaintiff, Zaidi, sufficiently proved by a fair preponderance of the credible evidence that statements *13 one and two were defamatory, but also that the defendants proved by a fair preponderance of the credible evidence that these statements were protected by a qualified, common interest privilege, the focus shifts to whether these statements were made with such malice, constitutional or common-law, sufficient to defeat the defendants’ common interest privilege.
Subject statement number one, coauthored by Mr. Malik, referring to plaintiff Zaidi’s “Attempt to Defraud Government by Claiming Unemployment Benefits,” stands in stark contrast to the Craco Research Group Employer Evaluation form, dated January 9, 1997 completed by the same Mr. Malik. The Craco employment reference reports that Ms. Zaidi was “outstanding” in her honesty, and “very good” in all other categories including: ability, attitude, effort, job performance, punctuality and work attendance and that she was a good bank manager overall. Such unexplainable contradictory statements, by the same person, about the same person, concerning the same period of time, were clearly made with “knowledge that [at least one statement] was false or * * * [with] reckless disregard of whether it was false or not.” (New York Times Co., supra at 279-280; see also, Garrison, supra at 74; Harte-Hanks Communications, supra at 667 n 7; Masson, supra at 496.) Thus, the fair preponderance of the credible evidence (see, supra, V. Legal Analysis, E. Malice and Damages, iii. Burden of Proof) shows that the defendants, having written a statements) while aware of its/their absence of truth or simply with reckless disregard as to the truth of the statement, acted with constitutional malice entitling the plaintiff to at least nominal compensatory damages. (Dun & Bradstreet, supra at 749; New York Times Co., supra at 279-280.) In concert, the jury unanimously came to the identical conclusion.
Similarly, statement number two, coauthored by Mr. Malik, accusing Ms. Zaidi of misreporting UBL’s security position to FRB and the NYSBD, also blatantly contradicts the Craco employment reference completed by the very same Mr. Malik. By the same reasoning as above and by fair preponderance of the credible evidence (see, supra, V. Legal Analysis, E. Malice and Damages, iii. Burden of Proof), statement two was likewise made with constitutional malice entitling the plaintiff to at least nominal compensatory damages. (Dun & Bradstreet, supra at 749.) Again, by a 6-0 vote the jury so found. Plaintiff’s claims for loss of reputation and earnings (the difference between her undocumented current salary, $47,000-$52,000, and prior salary, $83,126.32) for her entire claimed work expectancy *14 (10 years) was without a written employment contract. Plaintiff must prove actual compensatory and reputational damages. While there appears a past-current salary gap ($36,126.32-$41,126.32) there is no proof of duration of a written or oral, beyond at-will, employment contract, nor were there reputa-tional witnesses to attest to the loss of plaintiffs standing in the banking community. (Harris, supra at 208.)
H. Common-Law Malice and Punitive Damages
To reiterate, this court finds that with respect to a private person and a private matter the burden of proof for proving common-law malice, “hatred, ill will or spite,” is fair preponderance of the credible evidences as discussed in Corrigan and V. Legal Analysis, E, Malice and Damages, iii. Burden of Proof (supra). Such encourages consistency and efficacious adjudication as well as furthers public policy and justice. However, the court does not find that either of the defamatory statements herein rise to the level of common-law malice by a fair preponderance of the credible evidence. Thus, the plaintiff is not entitled to punitive damages, warranting a private fine by a civil jury for reprehensible conduct. (Gertz, supra at 350.)
I. CPLR 4401
CPLR 4401 provides “[a]ny party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue.” A CPLR 4401 motion should be granted “where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the non-moving party.” (Szczerbiak v Pilat, 90 NY2d 553, 556; Schmidt v Mercedes-Benz Manhattan, 254 AD2d 136 [1st Dept 1998].) The court finds, in fact and law, that there were triable issues of fact: i.e., defamatory statement, publication, application of the “common interest” privilege, and malice. Thus, defendants’ CPLR 4401 is denied.
J. CPLR 4404 (a)
CPLR 4404 (a) provides, “[a]fter a trial of a cause of action or issue triable of right by a jury, upon the motion of any party * ** * the court may set aside a verdict * * * and direct that judgment be entered in favor of a party entitled to judgment as a matter of law.” In order to set aside a jury verdict as against the weight of the credible evidence, the court must determine that there is “no valid line of reasoning and permissible infer- *15 enees which could possibly lead rationed [wo]men to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978].) Whether a jury verdict is against the weight of the evidence is essentially a discretionary and factual determination which must be exercised with considerable caution based upon the absence of substantial justice, not simply an unsatisfactory verdict or one with which the court disagrees. (Cohen, id; Nicastro v Park, 113 AD2d 129 [2d Dept 1985].) If the court does so find, the court “must set aside such a verdict and in appropriate case [it] may then direct a contrary verdict.” (Blum v Fresh Grown Preserve Corp., 292 NY 241, 245 [1944].)
After evidentiary review and deliberation, the court finds, in fact and law, that the evidentiary record, supported by the weight of the fair preponderance of the credible evidence shows the subject statements one and two were defamatory, though not per se. Moreover, the weight of the evidence supports the conclusions that statements one and two refer to this private plaintiff and were published to someone other than the plaintiff.
However, a search of the record does not support proof, by a fair preponderance of the credible evidence, of actual compensatory (other than nominal) damages, there being no proof of a contract or guaranteed “posting” of employment, vested pension or other loss of benefits or compensation not paid to plaintiff. Accordingly, the jury verdict as to compensatory damages is amply supported by the evidence {Cohen, supra at 493), however, the jury’s verdict as to punitive damages is against the weight of the evidence. Thus, defendants’ CPLR 4404 motion is partly granted and denied.
VIL Conclusion(s):
For the foregoing reasons, defendants’, United Bank Ltd. and Masood-Ur-Rahman Khan, CPLR 4401 motion is denied and the 4404 motion is partly granted and denied.
[Portions of opinion omitted for purposes of publication.]

. (Civil Rights Law § 74 [L 1962, ch 310, § 61, eff Sept. 1, 1963]; Domestic Relations Law § 235.) This absolute privilege does not apply in matrimonial actions.

. Civil Rights Law § 75 (L 1962, ch 310, § 62, eff Sept. 1, 1963).

. “Actual malice” — at common law, also known as “common-law malice,” connoted hostility, spite, ill will or culpable recklessness (Friedman v Ergin, 110 AD2d 620 [2d Dept 1985], affd 66 NY2d 645 [1985]). “Actual malice” — in its constitutional (First Amendment) sense, also known as “constitutional malice,” means knowledge of falsity or recklessness disregard for the truth. (New York Times Co., supra at 254; Rinaldi v Holt, Rinehart & Winston, *7 42 NY2d 369; see, V. Legal Analysis, E. Malice and Damages, i. Constitutional Malice and Compensatory Damages, infra.)

. Originally “fair comment” was a qualified privilege to protect statements of opinion based on facts on a matter of public interest. (Cole Fisher Rogow v Carl Ally, Inc., 25 NY2d 943 [1969]; Prosser and Keeton, Torts § 115.) Now statements of opinion are no longer actionable. (Milkovich v Lorain Journal Co., 497 US 1 [1990].)

. There are two Appellate Division, First Department, cases: Huggins (supra at 297) and Krauss (supra at 191 [which apply the negligence standard normally requiring a fair preponderance of the credible evidence, despite media publication]). There is also one Second Department nonjury case concerning both a private person and a private matter generally disregarded for its illogical application of the clear and convincing standard of proof with respect to malice. (Murphy v Herfort, 140 AD2d 415 [2d Dept 1988]; see also, Greenbaum v Svenska Handelsbanken, N.Y., 979 F Supp 973 [SD NY 1997]; Weldy, supra at 65.)